**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>John Allen Ross and Beth Raines Ross,<br><br>Debtor(s). | C/A No. 11-04792-HB<br><br>Chapter 13<br><br>**ORDER ON APPLICATION FOR COMPROMISE AND SETTLEMENT** |

**THIS MATTER** came before the Court on May 28, 2015, for consideration of the Notice and Application for Compromise and Settlement[1] ("Settlement Application") filed by Debtors John Allen Ross and Beth Raines Ross ("Debtors") and Creditor Harley-Davidson Credit Corp.'s ("Harley-Davidson") Objection.[2] Present at the hearing were Gretchen Holland, Chapter 13 trustee, Robert H. Cooper, counsel for Debtors, and Jason D. Wyman, counsel for Harley-Davidson. After careful consideration of the law, pleadings, and arguments of counsel, the Court finds as follows pursuant to Fed. R. Bankr. P. 7052.

### FACTS AND PROCEDURAL HISTORY

1. Debtors filed a petition for Chapter 13 relief on July 30, 2011 (the "Petition Date").

2. Debtors' Schedule B includes a 2004 Harley-Davidson FXD Dyna Super Glide (the "motorcycle"), valued by Debtors at $5,470.00. Schedule C claims an exemption in the motorcycle in the amount of $5,350.00 pursuant to S.C. Code Ann. § 15-41-30(A)(2).[3]

---

[1] ECF No. 35, filed Mar. 28, 2015.
[2] ECF No. 36, filed Apr. 15, 2015.
[3] ECF No. 10, filed Aug. 23, 2011.

3. Debtors' Schedule D lists a debt owed to Harley-Davidson in the amount of $7,564.00, incurred in August 2010, and states this is a purchase money security interest.

4. Harley-Davidson filed Proof of Claim No. 6-1 on August 25, 2011, in the amount of $7,955.94, secured by a properly perfected lien on Debtors' motorcycle (the "Proof of Claim").

5. As evidenced by the promissory note and security agreement attached to the Proof of Claim, Debtors purchased the motorcycle in used condition on September 4, 2010—less than one year prior to the Petition Date. A certificate of title, also attached to the Proof of Claim, was issued on September 28, 2010.

6. No party has objected to the Proof of Claim.

7. After the October 6, 2011 hearing denying confirmation of Debtors' original plan,[4] Debtors filed an Amended Chapter 13 Plan (the "Plan") on November 14, 2011.[5]

8. The original and amended plans provided identical treatment of Harley-Davidson's claim.[6] Harley-Davidson did not object to either plan.

9. In Section II(C) of the Plan, Debtors moved pursuant to 11 U.S.C. § 506[7] to value Harley-Davidson's collateral and limit its secured claim to $5,470.00, leaving an unsecured claim of $2,094.00.

---

[4] The order denying confirmation of Debtors' original plan provided that "[i]f filed, the amended plan may be confirmed without further notice or hearing upon the trustee's recommendation." ECF No. 17, entered Oct. 6, 2011. Any issues with the plan at that time were not related to this dispute.
[5] ECF No. 21.
[6] ECF No. 12, filed Aug. 23, 2011.
[7] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 et seq., will be by section number only.

2

10. Section IV(D) of the Plan provided that the secured portion of Harley-Davidson's claim would be paid by monthly payments of $109.00 with 5.25% interest until the $5,470.00 was paid in full.

11. Section IV(B)(1) of the Plan states "[t]he terms of the debtor's pre-petition agreement with a secured creditor shall continue to apply except as modified by this plan, the order confirming the plan, or other order of the Court. Holders of secured claims shall retain liens to the extent provided by 11 U.S.C. § 1325(a)(5)(B)(i)."

12. Section IV(E) of the Plan states Debtors do not propose to pay 100% of general unsecured claims.

13. The motorcycle was purchased less than 910 days prior to the Petition Date and Harley-Davidson financed the purchase. Therefore, Debtors' Plan does not comply with the "hanging paragraph" of § 1325(a). At the hearing on the Settlement Application, the parties—including the Chapter 13 trustee—conceded that to the best of their knowledge, this issue had not been noted by any party prior to this dispute.

14. There is no evidence to indicate Harley-Davidson did not receive adequate notice of Debtors' bankruptcy and the Plan in time to object. In fact, Harley-Davidson's Proof of Claim was filed prior to confirmation of the Plan and the Court's records reflect service on the creditor of documents and orders relevant to confirmation.

15. There is no evidence in the record from which the Court could conclude that Debtors included the valuation of the motorcycle in the Plan as the result of any bad faith. The only explanation discussed was inadvertence and the parties noted that the case was filed in 2011, but the vehicle in question is a 2004 model, inferring that a newer model likely would prompt greater inquiry by the Debtors and the Chapter 13 trustee.

16. Debtors' Plan was confirmed on January 26, 2012, on the recommendation of the Chapter 13 trustee, without any objections from any party.[8] No appeal was filed.

17. The confirmation order states "[t]he court hereby values secured claims and voids liens as set forth in the confirmed plan or as established by separate order to the extent permitted by 11 U.S.C. § 506(a), 506(d), § 1325(a), and applicable law."

18. Debtors' Plan provides for payments of $370.00 per month for a period of approximately 60 months. Relying on the terms of the confirmed Plan, Debtors have made payments to the Chapter 13 trustee for almost four years.

19. Harley-Davidson accepted payments from the Chapter 13 trustee pursuant to the confirmed Plan for almost four years and reports it has received distributions totaling $4,931.07 as of the hearing date.

20. On March 16, 2015, Debtors' motorcycle was involved in an accident, resulting in a total loss. Debtors maintained insurance for this loss.

21. On March 28, 2015, Debtors filed the Settlement Application, seeking to distribute insurance proceeds.[9] According to the Settlement Application, the insurer, Safeco Insurance, will pay $6,578.00 for the settlement of their claim for the motorcycle.[10] Debtors' Settlement Application proposes to pay Harley-Davidson $563.79, of which $538.93 is for the balance of its secured claim after valuation and $24.86 for its share of distributions due to unsecured creditors on account of the unsecured portion of its claim. Debtors' Settlement Application also proposes $595.00 be paid to their counsel and the remaining $5,419.21 be paid to Debtors.

---

[8] ECF No. 27.
[9] ECF No. 35.
[10] The insurance policy was not introduced into evidence during the hearing.

22.   Debtors assert the remaining settlement proceeds of $5,419.21 are necessary for Debtors to purchase a replacement vehicle because the totaled motorcycle was Mr. Ross' primary mode of transportation.

23.   Debtors have not yet completed payments under the Plan.

24.   There is no dispute that the insurance proceeds are property of the estate.

25.   The parties do not dispute that Harley-Davidson's lien attaches to the insurance proceeds and that Harley-Davidson is entitled to a portion of the insurance proceeds.

26.   Harley-Davidson does not consent to and filed a timely Objection to the distribution of the proceeds as proposed.  Harley-Davidson demands payment of $3,024.87 to pay the balance of its secured claim, absent valuation.

### DISCUSSION AND CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (b)(2)(K), and (b)(2)(O), and this Court may enter a final order.

Harley-Davidson argues that confirmation of the Plan was invalid because bifurcation of Harley-Davidson's claim violates the hanging paragraph of § 1325(a). According to Harley-Davidson, under *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010), this provision of the Plan is unenforceable and it is entitled to payment of its lien in full from the insurance proceeds.

Harley-Davidson also contends that, pursuant to § 1325(a)(5)(B) and the terms of the confirmed Plan, it retained its lien on the motorcycle, and consequently, on the insurance proceeds.  Therefore, it is entitled to payment in full of its secured claim, absent

5

valuation, because Debtors have not yet received a discharge under § 1328 or completed all of their obligations under the confirmed Plan as required by § 1325(a)(5)(B)(i).

### I. HARLEY-DAVIDSON IS BOUND BY THE TERMS OF THE CONFIRMED PLAN

A Chapter 13 plan may be confirmed if one of the following occurs with regard to secured claims provided for by the plan: (1) the holder of the secured claim accepts the plan, 11 U.S.C. § 1325(a)(5)(A); (2) a non-accepting holder of the secured claim retains its lien until the earlier of payment of the underlying debt or the debtor's discharge, 11 U.S.C. § 1325(a)(5)(B); or (3) the debtor surrenders the property securing the claim to the holder, 11 U.S.C. § 1325(a)(5)(C). Once a Chapter 13 plan is confirmed, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C § 1327(a).[11]

Harley-Davidson did not object to the Plan, appeal the confirmation order, or otherwise raise any issue as to the treatment of its claim until the hearing on this Settlement Application. No issues have been raised regarding adequate notice, Harley-Davidson accepted the Plan payments from the Chapter 13 trustee for almost four years, and there is no evidence of improper motive on the part of any party that sought or recommended confirmation of the Plan. Therefore, Harley-Davidson accepted the Plan pursuant to § 1325(a)(5)(A). *In re Crawford*, C/A No. 09-08171-JW, slip op., ECF No. 35 at 7-8 (Bankr. D.S.C. Jun. 8, 2015) (finding that because the creditor "was properly served with

---

[11] The other effects of confirmation of a Chapter 13 plan are:
    **(b)** Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
    **(c)** Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.
11 U.S.C. § 1327.

notice of the plan, its failure to object to its treatment under that plan constitutes acceptance of the plan pursuant to § 1325(a)(5)(A)" (citing *In re Flynn*, 402 B.R. 437 (1st Cir. BAP 2009)); *see also In re Holtslander*, 507 B.R. 779, 785 (Bankr. N.D.N.Y. 2014) ("By withdrawing its objection to confirmation, [the secured creditor] accepted the bifurcation of its secured claim prior to confirmation of Debtor's amended chapter 13 plan."). Because Harley-Davidson accepted the Plan under § 1325(a)(5)(A), § 1325(a)(5)(B) is inapplicable. *Id.* at 8-9 (stating that § 1325(a)(5)(B)(i) would only apply if modifications to the claim had been forced upon the creditor over its objection).

Further, Harley-Davidson's "hanging paragraph" argument ignores the effect of confirmation. While the Plan did modify Harley-Davidson's claim contrary to the "hanging paragraph," reliance on *Espinosa* in support of its argument that this provision of the Plan is unenforceable is misplaced. Conversely, in *Espinosa* the Supreme Court found:

> Given the Code's clear and self-executing requirement for an undue hardship determination, the Bankruptcy Court's failure to find undue hardship before confirming Espinosa's plan was a legal error. But the order remains enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal.

559 U.S. at 275, 130 S. Ct. at 1380 (internal citation omitted). Accordingly, the Supreme Court found that the *res judicata* effect of the order confirming the terms of Espinosa's plan bound the creditor and resulted in the discharge of accrued interest on the student loan, which would have otherwise been nondischargeable under the Code.[12] Harley-Davidson failed to object to the Plan or appeal the confirmation order. Therefore, it is bound by the order confirming the Plan and by its treatment under the Plan.

---

[12] This case is unlike *Espinosa*, where the legal error was evident in the plan itself.

7

## II. DISTRIBUTION OF THE INSURANCE PROCEEDS

The confirmation order states "[t]he court hereby values secured claims and voids liens as set forth in the confirmed plan or as established by separate order to the extent permitted by 11 U.S.C. § 506(a), 506(d), § 1325(a), and applicable law." This provision, together with the Code sections discussed above, limit Harley-Davidson's distribution under the Plan to the balance owed on the secured portion of its claim after valuation. However, Debtors have not completed their Plan and there are various ways this case may be concluded: Plan completion with or without discharge pursuant to § 1328(a); discharge pursuant to § 1328(b); conversion; or dismissal.[13]

Pursuant to § 348, Harley-Davidson's lien would be reinstated in full and it would be owed the contractual amount upon the conversion of Debtors' case prior to completion of the Plan. 11 U.S.C. § 348(f)(1)(C)(i) ("when a case under chapter 13 of this title is converted to a case under another chapter of this title—the claim of any creditor holding security as of the date of the filing of the petition shall continue to be secured by that security unless the full amount of such claim determined under applicable nonbankruptcy law has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of the case under chapter 13 . . ."). The same is true in the event of dismissal. 11 U.S.C. § 349(b)(1)(C) ("Unless the court, for cause, orders otherwise, a dismissal of a case . . . reinstates— any lien voided under section 506(d) of this title"). Therefore, distributing the insurance

---

[13] The Court cannot ignore the fact that nationwide Chapter 13 debtors complete their plans at a rate of approximately only 33.3%. *See* Gordon Bermant & Ed Flynn, *Bankruptcy by the Numbers –Measuring Performance in Chapter 13: Comparison Across States*, EXECUTIVE OFFICE FOR UNITED STATES TRUSTEES (May 7, 2015), http://www.justice.gov/ust/bankruptcy-numbers-measuring-performance-chapter-13-comparison-across-states. However, the Court notes that Debtors are in the fourth year of a five year plan and have made significant progress towards completion.

proceeds in the manner set forth in the Settlement Application at this time would dispose of the funds prematurely and leave Harley-Davidson without adequate remedy should this case be converted or dismissed prior to Debtors' completion of the Plan. To resolve the tension between the provisions of the not yet completed Plan that binds Harley-Davidson and Harley-Davidson's rights reserved under §§ 348 and 349, and as a result of the creditor's objection, the Court must provide some balance of the parties' interests.

The amount of the insurance proceeds available is $6,578.00.[14] Harley Davidson demands $3,024.87 of this amount, leaving a difference of $3,553.13, which may be distributed to Debtors and their attorney ($595.00 for attorneys' fees, as indicated in the Settlement Application).[15] Of Harley Davidson's $3,024.87 demand,[16] only $563.79 is due at this time pursuant to the Plan ($538.93 for the balance of its secured claim after valuation and $24.86 for its share of distributions due to unsecured creditors). The remaining $2,461.08 must be held until Debtors have completed payments under the Plan and, thus, conversion or dismissal is no longer a concern. *See In re Perry*, C/A No. 09-04429-8-JRL, 2011 WL 5909065, at *1 (Bankr. E.D.N.C. Oct. 24, 2011) (requiring remaining insurance proceeds after payment of secured claim be held by the trustee pending completion of the plan and discharge or conversion or dismissal) (citing *In re Feher*, 202 B.R. 966, 972 (Bankr. S.D. Ill. 1996)); *In re Norred*, C/A No. 09-40186-ELP13, 2011 WL 4433598, at

---

[14] The Court notes that with a Plan payment of $370.00 per month, and assuming the Debtors have a little more than one year of payments remaining, the insurance proceeds likely exceed the amount necessary to pay the proposed attorneys' fees and pay off the balance of Debtors' Plan in full, thereby limiting Harley Davidson's claim per the Plan immediately.

[15] Debtors asserted they were entitled to $5,419.21 of the balance of the insurance proceeds pursuant to their claimed exemption under S.C. Code Ann. § 15-41-30(A)(2). However, the Court does not find this argument persuasive, as the motorcycle was fully encumbered as of the Petition Date. *See In re Childers*, C/A No. 11-03985, slip op., ECF No. 108 at 10-11 (Bankr. D.S.C. Feb. 19, 2015) (discussing the debtors' inability to claim a homestead exemption for purposes under § 363(f) where there was no equity in the property).

[16] Harley Davidson's demand was limited to this amount in its Objection filed with the Court.

\*4 (Bankr. D. Or. Sept. 21, 2011) (requiring the remaining proceeds to be held by the trustee pending completion of the plan). Once the Plan is complete, the funds shall be distributed to the Debtors.

**IT IS THEREFORE ORDERED THAT:**

1. Harley-Davidson is bound by the terms of the confirmed Plan;

2. Pursuant to the terms of the confirmed Plan, $563.79 shall be distributed to Harley-Davidson to satisfy the balance of its secured claim after valuation and its unsecured distribution, and to secure release of the title to the motorcycle;

3. $2,461.08 shall be distributed to the Chapter 13 trustee or Debtors' counsel's trust account (at the election of the trustee) to be held and distributed to Debtors upon completion of the Plan, or to Harley-Davidson upon conversion or dismissal of Debtors' Chapter 13 case;

4. $595.00 may be distributed to Debtors' counsel as proposed in the Settlement Application; and,

5. The remainder of the insurance proceeds may be distributed to Debtors.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/16/2015**



US Bankruptcy Judge
District of South Carolina

Entered: 06/16/2015